MARTIN TUBBS, Pltff in Error, *v.* ABBY VAN KLEEK, Deft in Error.

### ERROR TO KENDALL.

In an action for breach of promise of marriage, seduction, if in consequence of the promise, may be given in evidence in aggravation of damages.

A party is always entitled to such damages, as are the natural and proximate result of the act complained of.

This was an action of trespass on the case, for breach of promise of marriage.

The plea denied the promise and undertaking.

At the May term, 1850, of the Kendall Circuit Court, the cause was tried before T. L. Dickey, Judge, and a jury, and resulted in a verdict and judgment for $1,000.00.

The evidence set out in the bill of exceptions, clearly proves the promise to marry, the birth of an illigitimate child, and that the father of the defendant in error had also brought an action against the plaintiff in error, to recover damages for the seduction of his daughter, which was pending at the time of the trial of this suit.

S. W. RANDALL, for Pltff in Error.

E. LELAND, for Deft in Error.

TRUMBULL, J. This was an action for a breach of a promise of marriage. Jury trial and verdict of a thousand dollars in favor of the plaintiff below. It was proven, on the trial, that the plaintiff had given birth to a child, and the Court, at her instance, instructed the jury as follows:

"That if the jury believe, from the evidence, that the defendant entered into a marriage contract with the plaintiff, and under the pretence and promise of marriage, seduced and begot the plaintiff with child, that circumstance, and violation of faith, should

be taken into consideration by the jury in estimating the damages."

The giving of this instruction is assigned for error, which is the only question in the case.

There is some conflict in the authorities, as to whether seduction committed under promise of marriage, is admissible in evidence, to aggravate the damages in an action for the breach of such promise, but the weight of authority, as well as the reason of the thing, appear to be decidedly in favor of the admission of such evidence. The only cases, to which reference has been made, as establishing a contrary doctrine, are those of Bucks *v.* Shain, 2 Bibb, 343, and Weaver *v.* Bachert, 2 Pa. State R., 80.

In the first of these cases, the promise to marry was made at a period subsequent to the seduction, and, as was well remarked by the Court, the seduction could not have been the consequence of the promise. In such a case, when an action was brought for the breach of the marriage promise, it would clearly be erroneous, to allow damages on account of an injury inflicted before the promise was made, and which could not have resulted from it. The case of Weaver *v.* Bachert, is based upon that of Bucks *v.* Shain, and so far as it goes, is an authority against the admission of proof of seduction in an action for a breach of marriage promise, but the reasoning of the Court in that case, is by no means satisfactory. The decision is placed upon the ground that illicit intercourse is an act of mutual imprudence, and that *volenti non fit injuria*, also upon the further ground, that the father has a distinct action for the seduction of his daughter, and that to allow the daughter to recover also, would be to subject the seducer to the payment of double damages.

It is possible, but hardly probable, that a case may arise where both parties are equally culpable, but the instruction under consideration, does not suppose such a case. It is based upon the presumption, that the jury believe from the evidence, that the defendant, under pretence of marriage, enticed the plaintiff from the path of rectitude and duty; and in such a case, to say that both parties were equally in fault, would be to confound the innocent with the guilty, and to visit the same condemnation on the party defrauded, as on him committing the fraud; nor is it true, that illicit intercourse is usually an act of mutual imprudence. In a vast majority of cases, the female is imposed upon,

and the consequences attending such intercourse are visited upon her with ten fold severity. In this case, the parties are not presumed to be *in pari delicto*, but the instruction pre-supposes a cheat on the part of the man. It is like the case, where a man promised to marry a woman, on condition that she would go to bed with him that night, which she did. It was objected, in an action, by the woman upon this promise, that it was *turpis contractus*, but Lord Mansfield said he thought the objection would not lie, "because the parties were not *in pari delicto*, but this was a cheat on the part of the man." Morton *v.* Fenn., 26, E. C. L. R., 80. So a bond given to a woman in consideration of past cohabitation, has been held good at law. Turner *v.* Vaughan, 2 Wilson, 339. In answer to the objection, that the bond was given for an immoral consideration, Cline, Justice, said: "I am in a court of law, and not in an ecclesiastical court; if a man has lived with a girl, and afterwards gives her a bond, it is good."

It is also a mistaken notion, to say that a father has a distinct cause of action for the seduction of his daughter. No action lies by the father simply for the seduction, but he may have an action for the loss of service occasioned by the lying-in of his daughter, and it is only by a fiction of law, invented by the Courts, that he is allowed damages in that action for the seduction. The damages, even then, are only such as *he* may have sustained in the disgrace brought upon his family, in his wounded feelings, or otherwise, and nothing is allowed on account of the suffering and disgrace of the daughter. It does not follow, therefore, that the seducer will be made to pay double damages for the same injury. He pays to the father for the injury done him; if the daughter is permitted to recover, it is for the injury done her, and it often happens that by one act, a wrong may be done several persons, for which, each has a right of action. Suppose a female is so unfortunate as to have no father, or person sustaining towards her that relation, which will authorize his bringing a suit for loss of service; according to the doctrine of the Pennsylvania Court, her seducer under promise of marriage, is answerable to no one for the fraud he has practised upon her. Sooner than establish such a principle, it would be well to adopt the language of Chief Justice Wilmot, in the case of Tullidge *v.* Wade, 3 Wilson, 19, which was an action by the father for loss of service, where he said: "The jury

have done right in giving liberal damages; and if A. B. brings another action against defendant, for breach of promise of marriage, so much the better; he ought to be punished twice;" but we are not driven to such extremities, the weight of authority is in harmony with the reason and justice of the case.   The Courts of Massachusetts, Missouri, Tennessee, and Indiana, have all held, that in an action by a female for a breach of promise of marriage, her seduction by the defendant, under promise of marriage, may be given in evidence in aggravation of damages.   Paul *v.* Frazier, 3 Mass., 72 ; Green *v.* Spencer, 3 Missouri, 318; Conn *v.* Wilson, 2 Overton, 233; Whalen *v.* Layman, 2 Blackf., 194.

The reason for these decisions is manifest.   A party is always entitled to such damages, as are the natural and proximate result of the act complained of.   2 Greenleaf's Ev., §256.

Whatever damages, therefore, the plaintiff suffered in consequence of defendant's refusal to marry her, she is legitimately entitled to recover in this action.   How are these damages to be estimated, unless we look at the circumstances of the parties, and the situation in which the plaintiff is left, by the defendant's refusal to perform his contract ?

All the authorities, not excepting the case in Pennsylvania, admit that parties in this action may show their circumstances, or condition in life, as matter of aggravation or mitigation.   Why, then, may not a female show the situation in which she is left, by the violation of his promise on the part of a man, who has agreed to marry her ?   Had he performed his contract, she would have been saved from disgrace, in part at least, and her child legitimated.   The direct consequence of his breach of contract, is the disgrace and ruin of her, whom, by means of that contract, he has seduced, and upon every principle of right and justice, he should be held responsible for the injury which his own breach of contract has occasioned.

The Court in Pennsylvania asks this question : "If, then, a woman cannot make her seduction a ground of recovery directly, how can she make it so indirectly ?"   The answer to such a question is obvious.   It is every day's practice, to give in evidence, by way of aggravating damages, circumstances which would not of themselves, constitute distinct causes of action.   Cases of this kind are too common to need illustration.   2 Greenleaf's Ev. §55, 267.   The injury done a female by the violation of a contract to

marry her is not the same in all cases, and whenever such contract has been used by the party making it, to inflict the most aggravated of injuries upon the woman, it is right that such injuries should be taken into consideration, by the jury, in estimating the damages which he should pay for the violation of his promise. A man who under pretence and promise of marriage, gains the affections of an innocent girl, seduces and then abandons her, inflicts an injury, for the recompense of which, money is wholly inadequate. Such a man, if he deserves the name, is entitled to no sympathy at the hands of either juries or Courts, but should be made to respond in heavy damages, the only recompense which the law allows, for the commission of an act, occasioning to the person injured, more real suffering and distress, and bringing upon her greater disgrace, than any other which man can commit.

Let the judgment be affirmed.

*Judgment affirmed.*

TREAT, C. J. dissenting. This action is for the breach of the contract to marry. The seduction of the plaintiff forms another and distinct cause of action. The one grows exclusively out of the contract to marry, the breach of which affects the daughter solely, and she alone can bring the action; the other proceeds from an immoral act, in the commission of which the daughter, in legal contemplation at least, is a partaker equally with the defendant, and the only civil remedy provided by the law in such case, is the action by the father, for the consequent expense and loss of service. They are separate and distinct causes of action, founded on entirely different considerations, and accruing to different persons. In the action by the father, the breach of the contract to marry, cannot be taken into consideration by the jury; nor ought the daughter to recover damages on account of the seduction. If she is allowed to do so, the recovery would be no bar to the action by the father, and consequently, the defendant might be twice made responsible for the same act. More than this, it would be permitting her to recover damages for an immoral act, in the doing of which she equally participated. The parties are *in pari delicto.* If the plaintiff has been debauched, it was the result of her own voluntary consent. It is contrary to the policy of the law to give one guilty party a

remedy against an associate in crime or immorality. On this ground, the ruling of the Circuit Judge was, in my opinion, clearly erroneous, for the real effect of his decision, was to authorize the jury to give the plaintiff damages for the seduction, thereby enabling her to accomplish indirectly, what the law, in no event, would allow her to do directly. There is not a single case to be found in the English Reports, that countenances such a doctrine. But the question must have occurred in that country over and over again, and would have found its way into the books, if the slightest doubt had been entertained on the subject. It is a legitimate inference, from this silence in the English Reports, that the principles of the common law do not sanction such a recovery. The notion seems to have originated in this country, and some of the Courts, as I cannot but think, more influenced by sympathy for the party debauched, or by indignation against the seducer, than by a stern adherence to the well established rules and distinctions of the common law, have seen proper to adopt it. The cases of Burks v. Shain, 2 Bibb, 341, and Weaver v. Bachert, 2 Barr, 80, lay down and enforce the true doctrine on this subject. The reasoning of the Courts in those cases is, to my mind, satisfactory and conclusive.