IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

## WESTERN DIVISION.

JACKSON, APRIL TERM, 1900.

SPELLINGS *v.* PARKS.

(*Jackson.* April 4, 1900.)

1. BREACH OF PROMISE. *Averment of date of contract in declaration.*

Averment that the marriage contract "was made on the —— day of January, 1895, and at and on divers other days and times before the commencement of this suit," is sufficient in a declaration in a breach of promise action. (*Post, p. 353.*)

2. SAME. *Seduction.*

In an action for breach of marriage promise the plaintiff may aver and prove her seduction in aggravation of damages. (*Post, p. 353.*)

( 351 )

---

Spellings *v.* Parks.

---

Cases cited: Conn *v.* Wilson, 2 Tenn., 233; Goodall *v.* Thurman, 1 Head, 214; Williams *v.* Hollingsworth, 6 Bax., 15; Ferguson *v.* Moore, 98 Tenn., 344; Kaufman *v.* Fye, 99 Tenn., 145.

3. SAME.   *Evidence of mother's disreputable character.*

In an action for breach of marriage promise the general reputation and standing of plaintiff's family may be shown to enhance or diminish damages, but it is not competent for defendant to prove that plaintiff's mother was a prostitute and mother of an illegitimate child.   (*Post, pp. 353, 354.*)

Case cited: Thompson *v.* Clendenning, 1 Head, 297.

4. SAME.   *Promise not made in consideration of illicit intercourse.*

There can be no recovery for breach of a marriage promise made upon consideration of illicit intercourse.   But the fact that the seducer resorted to such promise as an artifice to overcome the scruples of a modest and virtuous female and to induce her to surrender her virtue, will not render the contract illegal and void.   (*Post, pp. 354–356.*)

Case cited; Goodall *v.* Thurman, 1 Head, 214.

---

FROM   BENTON.

---

Appeal in error from Circuit Court of Benton County.   W. H. SWIGGART, J.

McCALL & McCALL for Spellings.

S. W. HAWKINS and J. A. CLEMENTS for Parks.

WILKES, J.   This is an action for damages for a breach of marriage contract and seduction.   There was a trial before the Judge in the Court below, neither party having demanded a jury, and there

Spellings *v.* Parks.

was judgment for the plaintiff for $1,500 and cost. The defendant has appealed and assigned errors.

The first error assigned is that the demurrer to the declaration should have been sustained. The grounds of demurrer are:

1. That the allegation in the declaration as to the time the alleged marriage contract was made is insufficient and indefinite. This allegation is that the contract was made on the —— day of January, 1895, and at and on divers other days and times before the commencement of this suit.

This is sufficient designation of time.

2. That there is a misjoinder—that an action for breach of promise and for seduction cannot be joined in the same suit. This is not error. The seduction is merely alleged in aggravation of damages, and it has been held in a number of our cases that in an action for breach of a marriage contract the plaintiff may give in evidence, in aggravation of damages, that she was seduced by the defendant. *Conn* v. *Wilson,* 2 Tenn., 233; *Goodall* v. *Thurman,* 1 Head, 214; *Williams* v. *Hallingworth,* 6 Baxter, 15; *Ferguson* v. *Moore,* 14 Pickle, 344; *Kaufman* v. *Fye,* 99 Tenn., 145.

Upon the trial defendant offered to prove that the mother of plaintiff was a prostitute and

20 P—23

the mother of illegitimate children. This was objected to and excluded. This was not error.

It is true the general reputation and standing of the family may be shown by the plaintiff to enhance and by the defendant to diminish damages, but the reputation of a particular member of the family other than the plaintiff or party seduced cannot be inquired into. *Thompson* v. *Clendenning,* 1 Head, 297.

It is said that the defendant proved that the plaintiff lived with her mother, and that the house kept by her mother had the reputation of being immoral and a house of prostitution. The latter part of this contention and assignment is not supported by the record. It was shown that plaintiff lived with her mother, and it was offered to be shown that the mother was a prostitute and had illegitimate children, but we do not find in the record any proof that the house she kept was one of immorality or prostitution.

It is said that no recovery should be had in this case because the plaintiff, by her statements, shows that the promise of marriage was made in consideration of illicit intercourse and is therefore void, and no action will lie for a breach of it. The case of *Goodall* v. *Thurman,* 1 Head, 214, is cited and relied upon, and does sustain the contention of defendant as to the principle of law laid down.

The plaintiff's expressions are somewhat con-

Spellings *v.* Parks.

fused and indefinite. At one point in her testimony she says: "He said if I would yield to him he would marry me. It was on the 10th or 11th of February he first said this, but I did not then yield. He worried me until about the last of February, and I yielded to him." Again she says: "I would not have yielded to him if he had not vowed firmly he would marry me, and gave me his hand on it, and he said if anything happened he would marry me at once." Again she says: "I would not have yielded to him if I had not loved him and he had not promised to marry me."

The defendant denies that he ever made her any promise of marriage at any time, but does not deny the sexual intercourse. We think, taking all of her statements together, and especially in view of the other evidence in the record, that the proper construction of her statements is that she would not have yielded to him but for his previous promise to marry her at some time, and for his assurance that if anything happened to her prejudice he would marry her at once. This does not mean that the illicit intercourse was the consideration for the promise, but that the contract was made the basis for obtaining this intercourse, and as a result of the promise she agreed to the intercourse. She states that she became engaged to defendant in 1894 and was not seduced until the last of February, 1895. Several

letters from him to her are in the record, and from their language and tone it is evident that she was permitting acts of intercourse under a promise that he would marry her and he so recognized it. A child was the result of this intercourse. From defendant's own testimony it appears that plaintiff was a timid, reserved, and modest girl when he first approached her. He says "at first she seemed to think it was death for me to touch her, but it was not long before she got tame, and when she did it was all at once." This testimony and other statements we regard as strongly corroborative of the version given by plaintiff and entirely consistent therewith, but inconsistent with defendant's theory.

We see no error in the record and judgment of the Court below, and it is affirmed with costs.