Florence E. Hickey *vs.* George W. Kimball.

Cumberland. Opinion November 9, 1912.

*Breach of Contract of Marriage. Condonation. Damages. Exceptions. Meretricious Relations. Motion. New Trial. Pari Delicto. Seduction.*

1. In an action for breach of contract of marriage, if seduction is alleged, it may be shown in aggravation of damages on the ground that the damages resulting to the plaintiff by reason of the breach of the marriage contract cannot be justly estimated without taking into consideration that increased humiliation and keener sense of shame and disgrace, on account of the seduction which the breach of the contract of marriage subjects her to.

2. The plaintiff was not entitled to recover damages for the seduction itself, because she was a participant in the wrong. But having been seduced by the defendant, if his subsequent refusal to marry her according to his promise subjected her to keener humiliation and deeper shame, because of the seduction than otherwise would have been the case, then that additional element of aggravation of feeling was to be considered by the jury in estimating her damages because of the breach.

On motion and exceptions by defendant. Overruled.

This is an action for breach of promise of marriage wherein seduction is alleged in aggravation of damages. Plea, general issue with brief statement alleging a waiver by plaintiff and release from promise, if any. That the alleged promise of marriage by him was conditional upon the plaintiff's conducting herself in a womanly manner, which condition was broken and disregarded by her.

The jury returned a verdict for the plaintiff for $3500, and the defendant excepted to certain rulings of the presiding Justice and filed a general motion for a new trial.

The case is stated in the opinion.

L. E. *Vernon*, and *Foster & Foster* for plaintiff.

*Guerney, Sturgis & Chaplin*, for defendant.

SITTING: WHITEHOUSE, C. J., SPEAR, CORNISH, KING, HALEY, JJ.

KING, J. This case is before the Law Court on defendant's exceptions and motion for a new trial. It is an action for a breach of promise of marriage, wherein seduction is alleged in aggravation of the damages. The verdict was $3500.

It is contended in support of the exceptions that it was incompetent to allow evidence of the alleged seduction. There are a very few decisions which so hold. The reason given for those decisions is, that, since a woman is not permitted, at common law, to recover for her seduction, she should not be permitted to do so indirectly by showing a seduction to increase her damages in an action for breach of promise of marriage. See *Wrynn* v. *Downey*, 27 R. I., 454, where Douglas, Ch. J., discusses the cases at length and argues in favor of the reason of the minority decisions.

But the great weight of authority is to the effect that evidence of seduction committed under promise of marriage is admissible in an action for the breach of such promise. *Lawrence* v. *Cooke*, 56 Maine, 187, 194; *Tyler* v. *Salley*, 82 Maine, 128; *Sherman* v. *Rawson*, 102 Mass., 395, 399; *Kelley* v. *Riley*, 106 Mass., 339; *Stokes* v. *Mason*, (Vt. 1911) 81 Atl., 162; *Wells* v. *Padget*, 8 Barb. (N. Y.) 323; *Kniffen* v. *McConnell*, 30 N. Y., 285; *Coil* v. *Wallace*, 24 N. J. L., 291; *Tubbs* v. *Van Kleek*, 12 Ill., 446; *Burnett* v. *Simpkins*, 24 Ill., 265; *Poehlmann* v. *Kertz*, 204 Ill., 418, 68 N. E., 467; *Sheahan* v. *Barry*, 27 Mich., 217; *Bennett* v. *Bean*, 42 Mich., p. 351; *Schmidt* v. *Dunham*, 46 Minn., 227, 49 N. W., 126; *Geiger* v. *Payne*, 102 Iowa, 581, 69 N. W., 554; *Lauer* v. *Banning*, (Iowa 1911) 131 N. W., 783, 786; *McKinsey* v. *Squires*, 32 W. Va., 41, 9 S. E., 55; *Kaufman* v. *Fye*, 99 Tenn., 145, 42 S. W., 25; *Spellings* v. *Parks*, 104 Tenn., 351, 58 S. W., 126; *Matthews* v. *Cribbett*, 11 Ohio St., 330; *Osmun* v. *Winters*, 25 Ore., 260, 35 Pac., 250; *Musselman* v. *Barker*, 26 Neb., 737, 42 N. W., 759; *Graves* v. *Rivers*, 123 Ga., 224, 51 S. E., 318; *Anderson* v. *Kirby*, 125 Ga., 62; *Bird* v. *Thompson*, 96 Mo., 424, 9 S. W., 788; *Liese* v. *Meyer*, 143 Mo., 547, 45 S. W., 282.

The doctrine established by this decided current of authority is, that, while damages for seduction, as a distinct cause of action, cannot be added to the damages for the breach of the promise of

marriage, yet if the fact of seduction is alleged it may be shown in aggravation of the damages, on the ground that the damages resulting to the plaintiff by reason of the breach of the marriage contract cannot be justly estimated without taking into consideration that increased humiliation and keener sense of shame and disgrace, on account of the seduction, which the breach of the contract of marriage subjects her to.

If it be conceded that the plaintiff and defendant are to be regarded as in pari delicto with reference to the act of seduction allowed to be shown, nevertheless, it is not to be overlooked that the wrongful act was committed in reliance upon a promise of marriage, the consummation of which in the contemplation of the parties undoubtedly would quite condoned the wrong, and place the plaintiff within the protection and respect of an actual marriage to her seducer where it is improbable, if not unnatural, that she would suffer any material mortification and shame because of their previous unlawful act.

But the breach of the promise to marry deprived her of all such protection and left her feelings, wounded by the rejection, exposed to the pains and sorrows incident to the humilation and shame of her seduction. That was the situation of the plaintiff at the time of the breach of the promise, and that situation should be shown and taken into consideration in ascertaining the full damages she is entitled to by reason of the breach. In *Sherman* v. *Rawson,* 102 Mass., p. 399, the court well said: "The plaintiff is entitled to compensation, but that term implies indemnity for all that she has suffered by the defendant's bad faith. It includes injury to her affections and wounded pride. It involves necessarily a consideration of all the circumstances of the plaintiff's actual situation at the time of the breach of the promise. If, by reason of an imprudent or criminal act in which both participated, she is brought to such a state that the suffering occasioned to her feelings and affections must necessarily be increased by his abandonment, then that would be but an inadequate and poor compensation which did not take it into account."

The jury were accurately instructed by the learned presiding Justice as to the purpose for which the evidence of seduction was admitted. They were told that the plaintiff was not entitled to

damages for the seduction itself, because she was a participant in that wrong. But, having been seduced by the defendant, if his subsequent refusal to marry her according to his promise; subjected her to keener humiliation and deeper shame, because of the seduction, than otherwise would have been the case, then that additional element of aggravation of feeling was to be considered by the jury in estimating her damages because of the breach. The instructions were correct, and the evidence of seduction properly admitted, in accordance with a doctrine well settled in practice and decision, and which seems to us reasonable and just.

An exception was also taken to the admission of evidence tending to show that an abortion was performed upon the plaintiff in which the defendant participated, either by performing it himself or procuring it to be done. This evidence was admissible as tending to show that the defendant was guilty of the alleged seduction of the plaintiff. That was the only significance of that evidence, and the court in charging the jury expressly so instructed them.

As to the other exceptions taken we find no error in the rulings complained of, and they are not urged in the brief of the learned counsel for the defendant.

The motion. The plaintiff's contention, briefly stated, as we gather it from the record, is this: That after she and the defendant had been "keeping company" with each other for several months, an engagement of marriage was entered into between them in the year 1905 or 1906; that she was then about 24 years of age, and he 30; that he had been married, and was keeping a country grocery store adjoining her father's dwelling house; that about six months after the engagement their relations became meretricious resulting in her pregnancy, and that an abortion was performed upon her by him or by his procurement; that the marriage ceremony was deferred by mutual consent during the lifetime of the plaintiff's parents because of their opposition to the defendant; that, although they had petty quarrels, the engagement continued in force and effect; that the subject of their marriage was often discussed between them, and that on at least two other occasions he specifically promised to marry her—in 1909 after the death of her father, and in 1910 after the death of her mother; that she had never released him from his promise or in any manner waived it, and that

it was a subsisting contract between them at the time of his marriage to a Miss Brown in January, 1911.

The defendant on the other hand, admitting that he kept company with the plaintiff during the period as claimed by her, and that their relations were meretricious, claimed that he never promised to marry her until the fall of 1909; that they had been having more or less trouble, and finally he then promised to marry her on condition that she should conduct herself in a becoming manner for six months; and that she did not fulfill that condition, whereby he was released from his promise. All this she denied.

The presiding Justice in his charge to the jury, presented the issues involved in the question of the defendant's liability in these words: "If you find either that there was no subsisting valid contract between them at the time of his marriage to Miss Brown, that is, a contract made by both and still subsisting so far as she was concerned, she never having waived it or abandoned it—if you find there was no such contract, your verdict will be for the defendant. If, on the other hand, you find that there had been a promise of marriage which she never had waived, and which she had not forfeited by misconduct, then you will be authorized to return a verdict for the plaintiff."

In addition to the testimony of the parties there were other facts and circumstances shown more or less in corroboration of their respective claims and contentions. The evidence is voluminous. We have examined it with care, and we are not pursuaded that the finding of the jury in the plaintiff's favor is unmistakably wrong.

As to the damages. The law furnishes no precise or definite rule of damages in a case like this, and their assessment is peculiarly within the province of the jury. They were to be computed on the principle of indemnity and reasonable compensation for the plaintiff's loss by reason of the breach of the promise of marriage. The jury had the right to consider, and undoubtedly did consider, as elements of the plaintiff's damage, the loss to her by reason of the disappointment of her reasonable expectations, in other words, the money value or wordly advantage to her of a marriage with the defendant, also the wound and injury to her affections caused by the rejection, and finally the distress of mind and mortification that she had suffered and will suffer as a result of the defendant's bad

faith in breaking his promise to marry her in view of their mere-tricious relations under the promise of the marriage.

Although the damages awarded in this case seem quite liberal in view of the evidence of the defendant's financial worth at the time of the breach, nevertheless they do not appear to us to be so clearly excessive or disproportioned to the plaintiff's loss, resulting from the defendant's breach of his promise to marry her, under all the circumstances disclosed, that the verdict ought to be disturbed on that ground.

*Exceptions and Motion overruled.*