PALMER v PACIFIC INDEMNITY COMPANY

1. INSURANCE—CONTRACTS—AMBIGUOUS PROVISIONS—CONSTRUCTION —DUTY TO DEFEND.

   Generally, ambiguous language in insurance contracts must be construed against an insurance company and most favorably to a premium-paying insured, and where an insurance company does not limit its duty to defend, as it could, the insured can reasonably expect the company to take an appeal from an adverse judgment.

2. INSURANCE—CONTRACTS—APPEAL AND ERROR—DUTY TO DEFEND.

   An insurance company is expected to proceed with an appeal, if requested by an insured, if it writes a broad "duty to defend" clause into its insurance contract.

3. INSURANCE—CONTRACTS—APPEAL AND ERROR—DUTY TO DEFEND.

   An insured is entitled to be defended by an insurer at both the trial level as well as the appellate level, unless otherwise specifically set forth in the contract of insurance.

4. INSURANCE—CONTRACTS—APPEAL AND ERROR—DUTY TO DEFEND— LIABILITY—DAMAGES—ATTORNEY FEES.

   Breach of an insurance company's duty to defend results in liability for any consequential damages including the cost of an appeal and reasonable attorney fees.

5. INSURANCE—CONTRACTS—APPEAL AND ERROR—JUDGMENT—DAM- AGES—MENTAL DISTRESS—POLICY LIMITS—FORESEEABLE DAM- AGE—ISSUE OF FACT.

   The mental distress to an insured caused by an insurer's failure to appeal a severe malpractice judgment considerably in excess

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 44 Am Jur 2d, Insurance § 1539.
[2] 44 Am Jur 2d, Insurance § 1537.
[4] 44 Am Jur 2d, Insurance § 1535.
[5] 44 Am Jur 2d, Insurance § 1532.
[6, 7] 43 Am Jur 2d, Insurance § 169.
[8] 43 Am Jur 2d, Insurance § 285.
[9] 43 Am Jur 2d, Insurance § 157.

of insurance policy limits is foreseeable and is a proper matter for jury consideration of damages.

6. Insurance—Adequacy of Coverage—Insured and Insurer—Special Relationship—Issue of Fact.

Generally, an insurance agent has no duty to advise a client as to the adequacy of coverage, but where there is evidence of a special relationship between the insured and the insurer, a fact situation is created for submission to a jury.

7. Evidence—Insurance—Insurance Coverage—Custom and Practice.

An insured is allowed to present testimony regarding the usual custom and practice concerning an agent's advising the insured on the adequacy of insurance coverage where such custom or usage is certain, definite, uniform and notorious.

8. Evidence—Insurance—Pamphlets and Documents—Admissibility—Abuse of Discretion.

Admission of insurance pamphlets and other documents into evidence is not an abuse of trial court discretion where these exhibits pertained to witnesses' limited testimony concerning customary practices among insurance agents to advise an insured on the adequacy of coverage and adequacy of coverage was a factor in the case.

9. Insurance—Notice—Principal and Agent—Scope of Authority—Jury Instructions.

Generally, knowledge of, or notice to, an insurance agent as to a matter within the scope of his authority which is acquired while the agent is acting within the scope of his authority, is chargeable to the insurer.

Appeal from Oakland, Frederick C. Ziem, J. Submitted June 16, 1976, at Detroit. (Docket Nos. 24212, 24213.) Decided March 28, 1977. Leave to appeal applied for.

Complaint by Benjamin E. Palmer, D. O., against Pacific Indemnity Company and Nettleship Company for payment of excess judgment over his insurance coverage arising out of a malpractice suit brought against the plaintiff by a third party. Judgment of no cause of action for defendant Pacific Indemnity Company and a judgment of

$75,000 against defendant Nettleship Company. Plaintiff appeals the judgment of no cause of action. Defendant Nettleship Company appeals from the $75,000 judgment, and plaintiff cross-appeals. Reversed and remanded.

*Neal L. Grossman,* for plaintiff.

*Martin, Bohall, Joselyn, Halsey, Rowe & Jamieson, P. C.,* for defendant Pacific Indemnity Company.

*Denenberg, Tuffley & Thorpe,* for defendant Nettleship Company.

Before: V. J. BRENNAN, P. J., and N. J. KAUFMAN and R. H. CAMPBELL,* JJ.

R. H. CAMPBELL, J. These cases are consolidated appeals of right from judgments entered in Oakland County Circuit Court in which a jury returned a verdict in favor of the plaintiff against defendant Nettleship Company in the amount of $75,000 and a verdict in favor of defendant Pacific Indemnity Company of no cause of action. Plaintiff's motions for *additur,* judgment *n. o. v.* or a new trial were all denied by the trial court as well as defendant Nettleship Company's motion for judgment *n. o. v.* and for a new trial. Plaintiff appeals from the judgment of no cause of action entered on behalf of Pacific Indemnity Company and files a cross-appeal against defendant Nettleship Company claiming that the trial court erred in instructing the jury on damages. Defendant Nettleship appeals from the $75,000 judgment entered against it.

This case arises out of a malpractice suit

---

* Circuit judge, sitting on the Court of Appeals by assignment.

brought against the plaintiff by a third party which resulted in an $82,000 judgment against plaintiff in August 1972. The plaintiff had malpractice insurance coverage of $10,000 with defendant Pacific Indemnity Company which he had purchased through defendant Nettleship Company, an insurance agency which specializes in professional malpractice insurance and was the sponsored insurance representative of the National Osteopathic Association. Proofs indicated that the plaintiff had been a client of defendant Nettleship Company for approximately 30 years. Plaintiff claimed that he never received any advice from defendants Nettleship Company or Pacific Indemnity Company indicating that his coverage was inadequate or that he should have more coverage. He submitted through the testimony of an insurance agent that $10,000 coverage was inadequate and that it was customary for insurance agents to advise and bring to the attention of their clients both the availability of additional insurance and the adequacy of insurance coverage. Thus, plaintiff claims that the defendants should pay for the excess judgment over his insurance coverage of $10,000.

The plaintiff also claimed that the attorney for defendant Pacific Indemnity Company promised him that they would appeal the jury verdict but they did not do so and, therefore, he had to hire an attorney to file a delayed claim of appeal which was denied by both the Michigan Court of Appeals and the Michigan Supreme Court. He sought damages in the amount of $12,000 to cover his attorney fees and costs in attempting to secure an appeal of this matter.

The insurance policy issued by Pacific Indemnity contained a clause which provided that it would

defend any suit brought against the insured. The trial court, based upon the defendant insurance company's interpretation of the policy that there were no reasonable grounds to appeal, instructed the jury that they were not to consider as items of damages the cost of an appeal, attorney fees or mental distress. The first issue is whether the trial court erred in concluding that the promise to defend provision of the insurance policy did not include the duty to appeal from an adverse decision, where the verdict exceeds the limit of the policy and the insurer believes that there are no reasonable grounds upon which to base an appeal.

We have found no Michigan cases on this point but the issue has been considered in other jurisdictions. In *Kaste v Hartford Accident & Indemnity Co,* 5 App Div 2d 203; 170 NYS2d 614 (1958), the court stated that it would follow the rule that the duty to defend was broader than the duty to pay. The covenant to defend would include the duty to prosecute an appeal where there were reasonable grounds for appeal. Judge Jerome Frank concurred in the result but noted his disagreement with the majority view that reasonable grounds had to justify the appeal. He noted that nothing in the insurance contract conditioned the obligation of the insurer upon such factor or limited its obligation only to supplying a defense up to the time of trial. As Judge Frank noted:

"By the terms of its policy, the defendant assumed the absolute duty to defend, for there are no words qualifying or limiting the pertinent paragraph in the insurance contract issued by it. Such a contract under established rules must, in case of doubt or ambiguity, be strictly construed against the insurer, which is responsible for the language used in the policy.

"It has frequently been stated that the duty to defend

is broader than the duty to pay *(Goldberg v Lumber Mutual Casualty Ins. Co. of New York,* 297 N.Y. 148, 77 N. E. 2d 131). Moreover, the duty to defend is indivisible and it requires the carrier to conduct the whole defense and, if necessary to vindicate the rights of the insured, to prosecute an appeal *(Mannheimer Bros. v Kansas Casualty & Surety Co.* 149 Minn. 482, 184 N.W. 189).

"Where the insurance company, as here, assumes a single obligation to defend its assured, I see no reason to draw a distinction between defense prior to or on appeal, in the absence of language in the contract expressing such an intention. Nor can I find justification for implying conditions as to the prosecution of an appeal not expressed within the ambit of the policy."

See also, *Reichert v Continental Insurance Co,* 290 So 2d 730, 733–734 (La App, 1974).

In Michigan, it has been the law that the duty to defend a suit is independent of the limits of the policy coverage. *City Poultry & Egg Co v Hawkeye Casualty Co,* 297 Mich 509; 298 NW 114 (1941). The defendant, Pacific Indemnity, asserts that the "duty to defend" on appeal should be conditioned upon whether the insurer reasonably believes that there are grounds for an appeal. The primary problem with this approach is that only if the insurance company declines to appeal, the insured seeks its own counsel and appeals alone, and wins, will it be absolutely determined that the insurance company erred and that reasonable grounds existed. This places a harsh burden upon the insured, particularly in a case such as this, where the limits of the policy are substantially below the amount of the judgment. Moreover, the mere fact that one appeals and loses does not necessarily imply that the grounds for appeal were not reasonable.

Generally, ambiguous language in insurance contracts must be construed against the insurance company and most favorably to the premium-paying insured. *Zurich Insurance Co v Rombough,* 384 Mich 228; 180 NW2d 775 (1970). The insurance company did not limit its duty to defend, as it could, and the insured could reasonably expect the company to take an appeal from an adverse judgment. Thus, we hold that an insurance company will be expected to proceed with an appeal, if requested by an insured, if it writes a broad "duty to defend" clause into its insurance contracts. To hold otherwise could mean that if plaintiff appealed in a malpractice suit in which judgment was in excess of the policy limits, the insurance company could pay into court the limits of its policy and the insured would be left without any assistance from the insurance company. The insured is entitled to be defended by the insurer at both the trial level as well as the appellate level unless otherwise specifically set forth in the contract of insurance. The trial court erred and thus, the judgment of no cause of action on behalf of Pacific Indemnity must be reversed.

As a result, the defendant Pacific Indemnity is liable for any consequential damages due to their breach of this duty. This includes the cost of appeal and reasonable attorney's fees. Palmer also claims damage due to mental distress inflicted because of Pacific Indemnity's failure to appeal this case. The question is whether such damages, if proved, are compensable. Pacific Indemnity claims that since plaintiff is complaining about a breach of contract, he cannot recover the tort damages of mental distress.

In *Stewart v Rudner,* 349 Mich 459, 471; 84 NW2d 816 (1957), the Court stated:

"The cases to which reference was just made involve a clear exception to the 'rule' (if there now is any such) that damages for mental suffering are not recoverable in contract actions. They are. When we have a contract concerned not with trade and commerce but with life and death, not with profit but with elements of personality, not with pecuniary aggrandizement but with matters of mental concern and solicitude, then a breach of duty with respect to such contracts will inevitably and necessarily result in mental anguish, pain and suffering. In such cases the parties may reasonably be said to have contracted with reference to the payment of damages therefor in event of breach. Far from being outside the contemplation of the parties they are an integral and inseparable part of it."

The mental anguish associated with the case at bar is not as extreme as that in *Miholevich v Mid-West Mutual Automobile Insurance Co,* 261 Mich 495; 246 NW 202 (1933), but is similar. In *Frishett v State Farm Mutual Automobile Insurance Co,* 3 Mich App 688; 143 NW2d 612 (1966), this Court held that the insurance company was liable for damages associated due to mental anguish for among other things, unjustly withholding benefits. Damages for mental suffering were allowed in *McCune v Grimaldi Buick-Opel, Inc,* 45 Mich App 472; 206 NW2d 742 (1973), where an employee sued his employer for the employer's failure to maintain a health and medical insurance policy. Such insurance was characterized as a "matter of 'mental concern and solicitude' ". *Id,* p 478. In the case at bar, the mental distress of failing to appeal a severe malpractice judgment considerably in excess of the policy limits would be considered foreseeable and would be a proper matter for the jury to consider.

The defendant-appellant Nettleship Company argued that the trial court should have directed a

verdict in favor of defendant-appellant as it had no duty to advise the plaintiff as to adequate malpractice coverage, either by law or because of a special relationship with the insured. The trial court properly instructed the jury that there was no duty of an insurance agent to advise his client as to adequacy of coverage, but the trial court told the jury that such an issue would exist only if they found that, through a special relationship, plaintiff should have been informed by defendant Nettleship Company as to the adequacy of his malpractice coverage. In this case, there was evidence of a special relationship between Nettleship and the plaintiff Palmer. The defendant was the sponsored insurance representative of the National Osteopathic Association and held itself out as an expert in the field of medical and professional malpractice insurance. Palmer had been a client for approximately 30 years. Given this, a fact situation was created regarding the question whether a special relationship existed and it would have been improper for the trial court to grant a directed verdict in favor of Nettleship.

Defendant-appellant Nettleship Company claims that the trial court erred in allowing the plaintiff to present testimony regarding the usual custom and practice within the State of Michigan concerning adequate insurance coverage. This Court has recognized that custom and usage may create a duty under special and limited circumstances—where such custom or usage is "certain, definite, uniform and notorious". See *St Gabriel Parish Credit Union v Barnett Pontiac, Inc,* 16 Mich App 1, 5; 167 NW2d 459 (1969). This testimony did not constitute error.

There appears to have been introduced into evidence insurance pamphlets and other docu-

ments to support the expert witnesses' testimony. This Court does not find that it was an abuse of discretion for the trial court to admit these pamphlets and writings into evidence since the exhibits pertained to the witnesses' limited testimony on which he believed to be the customary practices among Michigan insurance agents.

The defendant-appellant also claims that the trial court erred by refusing to instruct the jury as to the agency status as between defendant Nettleship Company and Pacific Indemnity Company. This Court is of the opinion that the trial court should have instructed the jury as to the agency relationship between defendant Nettleship Company and defendant Pacific Indemnity Company. As this Court stated in *State Automobile Mutual Ins Co v Babcock,* 54 Mich App 194, 201–202; 220 NW2d 717 (1974):

"Insurance companies are bound by all acts and contracts made by their agents which are within the apparent scope of authority conferred upon them; such authority, while not actually granted, is that which insurance companies knowingly permit agents to exercise or which is held out to the public." (Citations omitted.)

As a general rule, knowledge of, or notice to, an insurance agent as to a matter within the scope of his authority, and which is acquired while the agent is acting within the scope of his authority, is chargeable to the insurer. *Wendel v Swanberg,* 384 Mich 468; 185 NW2d 348 (1971). One of the issues in the case at bar was whether or not the defendant Nettleship Company was negligent in not advising plaintiff of inadequate coverage. It would appear that the principal would be liable for negligence on the part of his agent even though the

plaintiff need not elect which defendant to hold liable in case of a disclosed principal. See *National Trout Festival v Cannon,* 32 Mich App 517, 520–521; 189 NW2d 69 (1971), *Cronk v Chevrolet Local 659,* 32 Mich App 394, 401; 189 NW2d 16 (1971). Thus, there was reversible error committed when the trial court did not instruct the jury as to the principal-agent relationship.

Palmer finally asserts on cross-appeal, that the trial court erred in failing to allow the jury to consider damages due to mental distress. As we have previously concluded, mental damages, if proved, can be considered by the jury. However, it is impossible for us to determine what additional damages would be and thus, the judgment must be reversed. *Krajenke v Preferred Mutual Insurance Co,* 68 Mich App 211; 242 NW2d 70 (1976).

For the reasons herein stated the judgments are reversed and the matter is remanded to the trial court for a new trial as to all of the parties. Costs to be awarded to plaintiff-appellant.