KEWIN v MASSACHUSETTS MUTUAL LIFE INSURANCE
COMPANY

1. INSURANCE—CONTRACTS—CONTRACT DISPUTES—DAMAGES—MENTAL
ANGUISH.

Disability insurance contracts involve matters of mental concern
and solicitude; mental anguish damages may be recovered in
the context of an insurance contract dispute.

2. INSURANCE—CONTRACTS—BREACH OF CONTRACT—DAMAGES—MEN-
TAL ANGUISH—PREREQUISITES TO RECOVERY—JURY QUESTION.

The three things a plaintiff must establish to recover mental
anguish damages for breach of an insurance contract are (1)
that the contract involves matters of mental concern and
solicitude, (2) that the contract has been breached, (3) that the
breach caused mental anguish; and where a plaintiff is able to
establish these prerequisites, a jury may properly be asked to
place a pecuniary value on those damages.

3. INSURANCE—CONTRACTS—BREACH OF CONTRACT—DAMAGES—TORTS
—MENTAL ANGUISH—EMOTIONAL DISTRESS—EXEMPLARY DAM-
AGES—PUNITIVE DAMAGES.

Four interrelated and often confused concepts must be sorted out
in order to precisely define the mental anguish damages which
are recoverable in an insurance case involving a breach of
contract: (1) damages for the tort of intentional infliction of
emotional distress, (2) damages for mental anguish caused by a
tort or a breach of contract, (3) exemplary damages, and (4)
punitive damages.

4. DAMAGES—INSURANCE—DISABILITY INSURANCE—PUNITIVE DAMAGES
—EXEMPLARY DAMAGES—TORTS—CONTRACTS—DOUBLE RECOV-
ERY NOT ALLOWED.

Punitive damages are awarded solely to punish, exemplary dam-
ages are awarded not to punish but to compensate for injured
feelings and double recovery is not allowed; therefore, if a

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 44 Am Jur 2d, Insurance § 1797.
[5–7] 61 Am Jur 2d, Pleading § 32 et seq.
[8] 5 Am Jur 2d, Appeal and Error § 896.

plaintiff in a claim for mental anguish for breach of a disability insurance contract seeks to recover in both contract and tort, he may not recover the same damages under both theories and where a plaintiff alleges a breach of contract for which mental anguish damages are recoverable, he may not also recover exemplary damages.

5. Pleading—Complaints—Specific Averments—Notice to Defendant—Damages—Special Damages—Court Rules.

 A complaint must contain such specific averments as are necessary reasonably to inform the adverse party of the nature of the cause he is called upon to defend, and when items of special damages are claimed they must be specifically stated in the complaint (GCR 1963, 111.1[1], 112.8).

6. Pleading—Complaints—Notice to Defendant—Errors or Defects—Reasonableness of Notice.

 Errors or defects in the form of pleading which do not affect the substantial rights of the parties are never grounds for reversal; therefore, substantial omissions from a complaint should be overlooked if the complaint is nonetheless sufficient to provide the defendant with notice of the claims against which he must defend, but recovery should be denied if the complaint is not sufficiently specific to reasonably apprise the defendant of the nature of the claims he must answer (GCR 1963, 13).

7. Pleading—Complaints—Notice to Defendant—Unfair Surprises—Experimental Legal Concepts—Traditional Theories.

 A plaintiff seeking damages for mental anguish for breach of a disability insurance contract has a greater obligation to be specific in his allegations to protect a defendant against unfair surprises because legal concepts for such recovery are still experimental and not well established than he would if his pleadings or complaint raised more traditional theories for recovery.

8. Appeal and Error—Trial—Attorneys—Prejudicial Questioning—Isolated Incidents—Lengthy Trial—Prejudicial Impact Diminished—Instructions to Jury.

 The Court of Appeals should not reverse on the ground that a plaintiff's attorney was guilty of improper prejudicial questioning and argument where, viewed as isolated incidents, some of the attorney's statements were clearly improper, but viewed in the context of an extremely lengthy trial the impact of those statements was greatly diminished, and where the trial judge

took pains to instruct the jury to disregard those very statements which carried the greatest potential for improper prejudice.

Appeal from Genesee, Donald R. Freeman, J. Submitted October 11, 1977, at Lansing. (Docket No. 31474.) Decided November 21, 1977.

Complaint by Harland J. Kewin against Massachusetts Mutual Life Insurance Company for payment of benefits and for damages resulting from the failure to have paid benefits under a disability income protection policy. Judgment for plaintiff. Defendant moved for judgment notwithstanding verdict, or for a new trial or for remittitur. Motions denied. Defendant appeals. Affirmed in part and reversed in part.

*Rene J. Ortlieb,* for plaintiff.

*Rubenstein, Pruchnicki & Chittle,* for defendant.

Before: DANHOF, C. J., and ALLEN and H. L. HEADING,* JJ.

ALLEN, J. Defendant appeals from the March 29, 1976, jury verdict totaling $142,298.40 for the plaintiff in Genesee County Circuit Court. In addition to the usual procedural and instructional allegations of error, the appeal requires that we analyze the various causes of action and damage remedies available to an insured plaintiff who alleges that the insurance company defendant unreasonably resisted his claims for benefits.

The dispute arose from a disability income policy purchased by the plaintiff from the defendant on September 15, 1972. On December 2, 1972,

---

* Detroit Recorder's Court judge, sitting on the Court of Appeals by assignment.

plaintiff severely injured his right leg in a motor-cycle accident and filed a claim for benefits. Defendant, which had some reason to question the validity of the claim, paid benefits for the first two months only after requiring extensive documentation from the plaintiff and requiring that he file a separate claim for each month's benefits. Simultaneously, the defendant was conducting overt and covert investigations to determine the validity of the claim. Although benefits for the first two months were paid, they were not paid until some time after they were due. When the third month's payment was also late, the plaintiff again contacted the defendant. In a phone conversation, an agreement was worked out whereby the defendant would immediately pay three months' benefits in return for the plaintiff's agreement to waive benefits for a six-month period, *i.e.,* until October 1, 1973.

In November of 1973, the plaintiff again requested claim forms for additional benefits, but never submitted a claim. This suit was filed in August of 1974. After a lengthy trial, the jury found for the plaintiff and returned the following items of damages: (1) $16,500 in benefits under the disability insurance contract; (2) $75,000 for "mental or emotional distress"; (3) $50,000 for "exemplary damages".[1]

This appeal presents a number of difficult questions of law. We begin with the most difficult of those issues.

---

[1] The jury also awarded $798.40 as the agreed cash value of a related life insurance policy. That portion of the verdict will not be separately discussed in this opinion.

I. *What causes of action and damage remedies are available to an insured who alleges that he has suffered mental anguish as a result of his insurance company's bad faith refusal to honor a valid claim?*

While instructing the jury on exemplary damages, the trial judge noted "that the law is somewhat confusing in this regard". We can only second that observation and extend it to all of the issues raised by the above stated question.

In addition to traditional breach of contract and contract damage theories, the cases in this area appear to have accomplished an unfortunate intermingling of four related concepts which ought to have separate identities. Specifically, we refer to: (1) the tort cause of action for intentional infliction of emotional distress; (2) damages for emotional distress; (3) exemplary damages; and (4) punitive damages. We will first discuss causes of action; an analysis of damage categories follows that discussion. See also Anno: *Insurer's Liability for Consequential or Punitive Damages for Wrongful Delay or Refusal to Make Payments Due Under Contracts,* 47 ALR3d 314.

Traditionally, a plaintiff who successfully sued for breach of contract could obtain either specific performance or a damage award equal to the pecuniary equivalent of what he would have received if the contract had not been breached. It was not considered possible to compute consequential damages for mental anguish caused by the breach; and breach of contract was not considered sufficiently reprehensible to justify punishment unrelated to compensating the plaintiff for his loss. See the analysis by Justice SMITH in *Stewart v Rudner,* 349 Mich 459; 84 NW2d 816 (1957). See also *Jankowski v Mazzotta,* 7 Mich App 483; 152 NW2d 49 (1967).

In *Stewart v Rudner, supra,* the Supreme Court allowed a plaintiff to recover damages for mental anguish resulting from her physician's breach of contract calling for a caesarean section delivery of the plaintiff's baby. The specified operation was not performed and, possibly as a result of that failure, the baby was stillborn. While recognizing the traditional rule that damages for mental anguish are not recoverable in breach of contract actions, the opinion in *Stewart* recognized an exception for contracts which deal with "matters of mental concern and solicitude, * * * [where] a breach of duty with respect to such contracts will inevitably and necessarily result in mental anguish, pain and suffering". 349 Mich at 471.

It is important to note that Justice SMITH's opinion in *Stewart v Rudner, supra,* was not signed by a majority of the justices. Four members of the Court signed the opinion while the other four justices concurred in the result without specifying the reasons for their refusal to join in the opinion. The opinion has often been cited for its analysis of prior law, but no majority opinion of the Supreme Court has ever either adopted or rejected its central thesis.

However, in the Court of Appeals, that opinion has been used to justify a significant expansion in the remedies available to an insured person who alleges that his insurer has breached the insurance contract. The trend, which has rapidly accelerated in the last year, began with *Frishett v State Farm Mutual Insurance Co,* 3 Mich App 688; 143 NW2d 612 (1966), *lv den,* 378 Mich 733 (1966). That decision held that an insured could bring a tort action for intentional infliction of emotional distress against her own automobile insurance company. As authority for that holding, *Frishett*

cited *Stewart v Rudner, supra,* and the Restatement, Torts (1948 supp), § 46. By citing *Stewart* in the context of a tort decision, the *Frishett* opinion began the intermingling of tort and contract law which has created so much confusion in the present case.

Defendant insurance company sought leave to appeal the *Frishett* decision to the Supreme Court. In its order denying leave, the Supreme Court said:

"Reversal of this summary judgment will doubtless bring about a trial of plaintiff's allegations, the record of which will provide a much better footing for determination of the posed question of law.

\*    \*    \*

"It is time to remind again as Justice Holmes did for the court in *United States v Carver,* 260 US 482, 490 (43 S Ct 181, 67 L Ed 364), that 'The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times', and that this Court has formally adopted that reminder as expressive of its policy and attitude toward the effective orders denying leave to appeal [Citations omitted.]

"This means that the Supreme Court expresses no present view with respect to the legal questions dealt with in the opinion of the Court of Appeals." 378 Mich at 733–734.

Unfortunately, *Frishett* never returned to the appellate courts, thus the Supreme Court never spoke on the questions decided by the Court of Appeals. No subsequent Supreme Court decision has ever cited *Frishett* but, along with *Stewart v Rudner, supra, Frishett* has pioneered the aforementioned expansion of remedies in this Court.

Insurance contracts were once thought to be commercial in nature and thus not eligible for the

*Stewart v Rudner* exception for contracts involving matters of mental concern and solicitude. See *e.g., Secor v Pioneer Foundry Co,* 20 Mich App 30; 173 NW2d 780 (1969). But that perception of insurance contracts began to change in *McCune v Grimaldi Buick,* 45 Mich App 472; 206 NW2d 742 (1973),[2] wherein plaintiff was allowed to recover mental anguish damages from his employer because the employer had breached a provision of the employment contract requiring it to pay the plaintiff's health insurance premiums. This holding was based squarely on the "mental concern and solicitude" rule in *Stewart v Rudner, supra,* without recognition of the fact that there was no majority opinion in the *Stewart* case.

The next important decision in this series was *Krajenke v Preferred Mutual Insurance Co,* 68 Mich App 211; 242 NW2d 70 (1976),[3] wherein this Court held that a plaintiff insured could recover "exemplary damages" from her insurance company where the company had wrongfully failed to honor a claim for freezing damage to the plaintiff's house. The *Krajenke* opinion is confusing in two respects. First, while it purports to authorize exemplary damages for breach of insurance contract, it cites *Frishett v State Farm Mutual Insurance Co, supra,* which recognized a tort for intentional infliction of emotional distress. *Krajenke* then compounds the problem by emphasizing that the *Frishett* opinion was based on the Restatement of

[2] For an earlier example of the same reasoning, *see Miholevich v Midwest Mutual Auto Insurance Co,* 261 Mich 495; 246 NW 202 (1933).

[3] *Krajenke* was actually decided a few months before *Bolden v John Hancock Mutual Life Insurance Co,* 422 F Supp 28 (ED Mich, 1976), a Federal case applying Michigan law. *Bolden* correctly distinguishes between tort and contract concepts; but it is flawed by its failure to anticipate the willingness of this Court to allow recoveries in insurance contract cases.

the Law of Torts. Also, in the context of a quotation from *Frishett, Krajenke* relies on *Stewart v Rudner, supra,* without any explanation as to why a property casualty insurance policy might be classed as a contract involving "matters of mental concern and solicitude". The actual result in *Krajenke* was to remand for a new trial because the trial court had failed to adequately explain exemplary damages to the jury.

The next important case is *Palmer v Pacific Indemnity Co,* 74 Mich App 259; 254 NW2d 52 (1977). The defendant in that case was a medical malpractice insurer. Its insured was found to be entitled to damages for mental distress because the defendant breached the duty to defend clause of the insurance contract by failing to appeal a malpractice judgment against the plaintiff which exceeded the limits of the policy. The opinion cites *Stewart v Rudner, supra,* and *McCune v Grimaldi Buick, supra.*[4]

The most recent case touching on these issues is *Seaton v State Farm Life Insurance Co,* 75 Mich App 252; 254 NW2d 858 (1977). Plaintiff successfully appealed in that case from a judgment of no cause of action for the defendant life insurance company which had refused to pay benefits for the death of the plaintiff's husband. The plaintiff had

---

[4] The opinion also cites *Frishett v State Farm Mutual Insurance Co, supra.* While *Frishett* is similar in spirit, we once again emphasize that *Frishett* should be cited as a tort case, not as a breach of contract case. The *Frishett* court summarized the question before it as follows:

"The question before this Court is whether the plaintiff may recover damages for mental suffering caused by deliberate acts done with the intent to cause such mental suffering."

*Frishett* is a tort case, but it drew support *by analogy* from *Stewart v Rudner, supra,* a contract case. Both *Palmer v Pacific Indemnity Co, supra,* and *Krajenke v Preferred Mutual Insurance Co, supra,* cited *Stewart* and *Frishett* without explicitly recognizing the tort/contract differentiation.

requested jury instructions on (1) "punitive or exemplary damages"; and (2) "mental anguish" damages. 75 Mich App at 257. The trial court refused to give instructions on either subject. On appeal, this Court held that the jury should have been instructed on mental anguish damages since a personal life insurance policy entailed "matters of mental concern and solicitude". 75 Mich App at 260. *Palmer v Pacific Indemnity Insurance Co, supra,* and *McCune v Grimaldi Buick, supra,* were cited in support of this holding. This Court did not discuss the separate request for punitive or exemplary damages. It is not clear from the *Seaton* opinion whether that panel agreed with the trial judge that punitive and exemplary damages were the same as damages for mental anguish, or whether it believed that those damages had a separate identity but were not appropriate in the *Seaton* case.

None of the cited Court of Appeals cases have been reviewed by the Supreme Court. With that caveat in mind, we will attempt a summary of the rules established by *Stewart v Rudner, supra,* and the several decisions of this Court.

First, *Frishett v State Farm Mutual Insurance Co, supra,* establishes at least a theoretical possibility of recovering in a tort action against an insurer. We are not aware of any Michigan case in which such a recovery has actually been obtained.

The majority of the cases have dealt with awarding damages for mental anguish in breach of contract actions based on insurance policies. These cases all trace their roots to Justice Smith's opinion in *Stewart v Rudner, supra,* where he stated that such damages were awardable for a breach of contract where the contract involved "matters of mental concern and solicitude". The contract in-

volved in *Stewart* was unique. At that time, it is doubtful that any type of insurance contract would have qualified for the exception discussed by Justice SMITH. One of the remarkable things about the recent decisions of this Court has been the ease with which a variety of insurance policies have been accepted as contracts involving mental concern and solicitude. That phrase now encompasses health insurance *(McCune v Grimaldi Buick, supra)*, fire and casualty insurance *(Krajenke v Preferred Mutual Insurance Co, supra)*, professional malpractice insurance *(Palmer v Pacific Indemnity Insurance Co, supra)*, and life insurance *(Seaton v State Farm Life Insurance Co, supra)*. No Michigan court has considered whether disability insurance should be placed in the same classification. In *Bolden v John Hancock Mutual Insurance Co, supra,* fn 3, a Federal district judge held that disability insurance did not qualify for the *Stewart* exception. However, that decision was made without the benefit of *McCune, Krajenke, Palmer,* and *Seaton.* Given the clear consensus of this Court established by those four decisions, we must reject *Bolden,* and hold that disability insurance contracts are also concerned with matters of mental concern and solicitude.

Having established that damages for mental anguish are sometimes recoverable in the context of an insurance contract dispute, our next task is to further define exactly when such damages are recoverable.

*Frishett v State Farm Mutual Insurance Co, supra,* must be treated separately. If a plaintiff can establish the tort of intentional infliction of emotional distress, he obviously may recover damages for that emotional distress. Since many Michigan decisions state that exemplary damages are in-

tended to compensate for mental distress, the question arises as to whether a plaintiff might recover both tort damages for emotional distress and exemplary damages. This question is discussed in more detail below.

The next question is whether mental anguish damages are recoverable whenever a breach of insurance contract results in mental anguish. With the exception of *Krajenke v Preferred Mutual Insurance Co, supra,* the decisions seem to require only that the breached contract involve matters of mental concern and solicitude. If that requirement is met, the plaintiff is entitled to damages for mental anguish if those damages can be established. *Stewart v Rudner, supra, McCune v Grimaldi Buick, supra, Palmer v Pacific Indemnity Insurance Co, supra,* and *Seaton v State Farm Life Insurance Co, supra. Krajenke* is a special case because its reliance on *Frishett v State Farm Mutual Insurance Co, supra,* makes it a hybrid tort/contract case. By adopting language from the Restatement of the Law of Torts, *Krajenke* would require that a plaintiff establish that the insurance company's breach had been done with the intent to inflict mental suffering and that the conduct go beyond "all reasonable bounds of decency". 68 Mich App at 218–19. The clear consensus of the pure contract cases is that a plaintiff must establish three things: (1) that the contract involves matters of mental concern and solicitude; (2) that the contract has been breached; and (3) that the breach has caused mental anguish.

Having established that mental anguish damages may be recovered in the context of an insurance contract dispute, and having outlined the elements which a plaintiff must establish in order to recover such damages, we now must precisely

define the damages which are recoverable. This requires a sorting out of four interrelated and often confused concepts: (1) damages for the tort of intentional infliction of emotional distress; (2) damages for mental anguish caused by a tort or a breach of contract; (3) exemplary damages; and (4) punitive damages.

We again begin by setting aside *Frishett* (and probably *Krajenke)* which clearly involved only the first type of damages, *i.e.,* damages resulting from the tort of intentional infliction of emotional distress.

The second category, *i.e.,* mental anguish damages caused by either a tort or a breach of contract is fairly straightforward. It has always been accepted that those damages were frequently suffered by tort or contract breach victims. The concern has been that such damages could not be accurately measured and that they could easily be fraudulently claimed. The recent cases, however, indicate that those concerns are no longer a bar to recovery. See *Stewart, McCune, Palmer* and *Seaton.* If a plaintiff establishes the three prerequisites for recovery of mental anguish damages, a jury may properly be asked to place a pecuniary value on those damages.

The final two damage categories *i.e.,* exemplary damages and punitive damages are hopelessly intertwined unless they are, in fact, the same thing. The two terms are often used interchangeably. See *Alexander v Detroit,* 392 Mich 30; 219 NW2d 41 (1974), and 9 Michigan Law & Practice, Damages, § 91, p 87. It has been held that Michigan never awards true punitive damages because damages are always awarded to compensate, never to punish. *Ray v Detroit,* 67 Mich App 702; 242 NW2d 494 (1976). But *cf. Dassance v Nienhuis,* 57 Mich

App 422; 225 NW2d 789 (1975), wherein this Court clearly intended to punish the defendant for especially reprehensible behavior even if the plaintiff had not suffered damages commensurate with the punitive damage award.

However the term may have been used in the past, we will treat punitive damages as damages awarded solely to punish. We are not aware of any Michigan case in which punitive damages have been awarded for a breach of contract. In *Dassance v Nienhuis, supra,* such damages were awarded for tortious interference in a contract, a tort.

The concept of exemplary damages remains to be defined. We believe that *Ray v Detroit, supra,* sets forth a proper definition. The *Ray* decision is especially useful because it clearly states that exemplary damages are awarded to compensate, not to punish. The *Ray* case states that exemplary damages are awarded to compensate for "injury to feelings" when the injury has been "maliciously and wantonly inflicted". 67 Mich App at 704.

Because exemplary damages as defined in *Ray* are awarded to compensate injured feelings, there obviously is an overlap with the concept of damages for mental anguish caused by a tort or a breach of contract. We previously raised but did not decide the question of whether both types of damages might be recovered for the same tort or breach of contract. The present case raises precisely that question and we hold that the recovery which was allowed here, *viz.,* $75,000 for mental or emotional distress, and $50,000 for exemplary damages was an impermissible double recovery for the same mental anguish. Therefore, the damage award must be reduced. There are statements in some of the cases which would suggest that a

double recovery may be permitted. See *Hasted v Van Wagnen,* 243 Mich 350; 220 NW 762 (1928). And see the quotation from *Scripps v Reilly,* 38 Mich 10 (1878), which appears at page 705 of the opinion in *Ray v Detroit, supra.* However, we are convinced that such a double recovery could be permitted only if treated as punitive damages, *i.e.,* damages which are intended solely to punish, not to compensate. Thus, the statements that suggest the possibility of a double recovery are completely inconsistent with the definitions of exemplary damages which emphasize that exemplary damages are awarded solely to compensate.

Absent some authority authorizing us to punish defendants, we will not allow a double recovery. If a plaintiff seeks to recover in both contract and tort, he may not recover the same damages under both theories. Similarly, where a plaintiff alleges a breach of contract for which mental anguish damages are recoverable, he may not also recover exemplary damages.

A review of the cases suggests that exemplary damages as they are defined in Michigan were intended to mitigate the harshness of the rule that mental anguish damages could not be recovered even when proven. *Stilson v Gibbs,* 53 Mich 280 (1884), *Wise v Daniel,* 221 Mich 229; 190 NW 746 (1922), *Smith v Jones,* 382 Mich 176; 169 NW2d 308 (1969) (ADAMS, J., concurring). Thus it seems likely that exemplary damages were awarded for injured feelings where the defendant's conduct was so reprehensible that it would have been unjust to allow him to rely upon the prohibition against recovery of mental anguish damages. But the converse of that rule should also apply. Since we now propose to allow recovery of mental anguish damages resulting from the breach of certain insur-

ance contracts, plaintiffs in such cases should not be allowed a double recovery through an award of exemplary damages.

We earlier noted that this Court has been the principal actor in expanding the remedies available to insured persons in disputes with their insurance companies. None of the important decisions of this Court has been evaluated in a full opinion by the Supreme Court. And *Stewart v Rudner supra,* the one Supreme Court decision which we have extensively discussed, was not a majority opinion. We have attempted to collect all of the relevant recent decisions and, where necessary, harmonize those decisions in order to present a consensus rule. Given the increasing frequency of these cases, we believe that the bench and bar would benefit greatly from a thorough Supreme Court discussion of these issues. Perhaps the present case will serve as a vehicle for that purpose.

II. *Which causes of action and elements of damage were properly pled by the plaintiff?*

Every complaint must contain:

" * * * such specific averments as are necessary reasonably to inform the adverse party of the nature of the cause he is called upon to defend." GCR 1963, 111.1(1).

Further, when items of special damage are claimed, they must be specifically stated in the complaint. GCR 1963, 112.8.

The General Court Rules of 1963 were intended to substitute notice pleading for rigid forms of action. GCR 1963, 13, specifically states that errors or defects which do not affect the substantial rights of the parties are never grounds for rever-

sal. Substantial omissions from a complaint should be overlooked if the complaint is nonetheless sufficient to provide the defendant with notice of the claims against which he must defend. *City of Auburn v Brown,* 60 Mich App 258; 230 NW2d 385 (1975). But recovery should be denied if the complaint is not sufficiently specific to reasonably apprise the defendant of the nature of the claims he must answer. *Lockaby v Wayne County,* 63 Mich App 185; 234 NW2d 444 (1975).

We have carefully reviewed all of the pleadings filed by the plaintiff, including his complaint, the various pretrial summaries, his belatedly proposed amendment to the complaint and the equally tardy reply to the defendant's affirmative defenses. Those pleadings clearly allege a breach of the disability insurance contract and request as damages whatever amounts the plaintiff should have received pursuant to that contract. We also find a request for "punitive" damages and miscellaneous allegations that the defendant acted in bad faith and breached its "fiduciary duty" under the contract.[5]

The plaintiff urges us to find in those pleadings sufficient allegations to permit him to recover: (1) damages for the tort of intentional infliction of emotional distress; (2) mental anguish damages caused by either a tort or a breach of contract; or (3) exemplary damages.

In deciding if the pleadings are sufficient, we are required to balance our policy in favor of liberal pleading rules against our obligation to protect the

---

[5] The reply to affirmative defenses which was filed at the beginning of trial also contains allegations that the defendant's conduct was "deceitful" and amounted to "malicious conduct". However, it should be noted that the trial judge allowed filing of this belated pleading based on his finding that it added nothing of substance to the pleadings which were already of record.

defendant against unfair surprises. We must require more of the plaintiff in this case than we would in a more traditional tort or breach of contract action because we are dealing with concepts which are still experimental and not well established in Michigan law. As our earlier discussion should indicate, most of the developments on this front have occurred very recently. In fact, three of the cases which support a plaintiff's right to recover mental anguish damages from an insurer were decided after the trial in this case. *Krajenke v Preferred Mutual Insurance Co, supra, Palmer v Pacific Indemnity Insurance Co, supra,* and *Seaton v State Farm Life Insurance Co, supra.* Given this situation, we believe that a plaintiff has a greater obligation to be specific in his allegations than he would be if his complaint raised more traditional theories.

We find no allegations in the pleadings which would support a tort recovery for intentional infliction of emotional distress.

Similarly, we find no allegation sufficient to support a recovery of mental anguish damages for breach of a contract.

The exemplary damage question is the most difficult one for us. In the first section of this opinion, we held that exemplary damages could not be recovered in this type of case because it was possible to recover damages for mental anguish and exemplary damages were intended to compensate for the same injuries. But, defects in the pleadings have prevented recovery of mental anguish damages. The plaintiff did not specifically request exemplary damages. But he did request punitive damages. Historically, punitive damages have overlapped exemplary damages. And exemplary damages in turn have overlapped damages

for mental anguish which we have held are recoverable in this type of breach of contract action. This multiple overlap factor weighs in favor of allowing some recovery.

The plaintiff concedes "that the complaint is not a work of art". With that we must agree. Nevertheless, it does allege conduct by the defendant which went well beyond proper investigation and negotiation. It also requests that additional damages (called punitive damages in the complaint) be awarded because of the defendant's allegedly reprehensible conduct. Previous cases have been very lenient about the requirement that the mental anguish basis for exemplary damages be specially pleaded. See *Wise v Daniel, supra,* and *Smith v Jones, supra.* It is a close question, but we believe that the allegations were sufficient to support an exemplary damage recovery in this case since there will be no direct recovery for mental anguish damages.[6]

## III. *Other issues*

Defendant also appeals from several evidentiary rulings made by the trial court. Some of those issues have become moot by virtue of our prior holding in this opinion. As to those questions which have not become moot, we believe that the trial judge did not err.

The parties also disagree as to the legal effect of the agreement of May 2, 1973, under which the defendant agreed to pay three months benefits and

---

[6] In cases tried after the release of this opinion, plaintiffs who fail to properly plead mental anguish damages should not expect to achieve the same result by changing labels. We have made allowances for both sides here because of the newness of the concepts involved. We also note that the trial judge's instructions on exemplary damages were excellent. Thus we have no concern that the damages were awarded without proper findings by the jury.

the plaintiff agreed to waive all his claims until October 1, 1973. The trial judge refused to direct a verdict on any part of that agreement. Instead, he let the jury interpret the agreement. We believe that the plaintiff's interpretation of the agreement is the correct one. However, the agreement is sufficiently ambiguous to justify the trial court's refusal to interpret it as a matter of law. Since it is clear that the jury also adopted the plaintiff's interpretation, we see no possibility of prejudicial error.

Defendant next argues that the plaintiff's attorney was guilty of improper prejudicial questioning and argument. Viewed as isolated incidents, some of the plaintiff's attorney's statements were clearly improper. However, viewed in the context of this extremely lengthy trial, the impact of those statements was greatly diminished. Further, the trial judge took pains to instruct the jury to disregard those very statements which carried the greatest potential for improper prejudice. We see no basis for reversal on this point.

The defendant next complains of the trial judge's rulings on several instructional questions. As with the evidentiary rulings, many of these issues have become moot by virtue of our prior holdings in this opinion. An important exception is the dispute over whether the jury should have been instructed that the plaintiff's "usual occupation" was real estate sales or whether the jury should have been left free to decide that the plaintiff was also a sheet metal worker. This question was important because the policy provided benefits if the plaintiff was disabled from his "usual occupation". Given the disparate amounts of physical activity required, it was obviously much more likely that the plaintiff was disabled from sheet

metal working than that he was disabled from real estate work. The trial judge refused to direct a verdict on this point, choosing instead to let the jury decide upon the plaintiff's usual occupation. While the bulk of the evidence seemed to indicate that the plaintiff had abandoned sheet metal working in favor of a real estate career, there was some evidence to support the contrary view. Therefore, the trial judge did not err by submitting the question to the jury.

Finally, the defendant argues that the jury awards for mental distress and exemplary damages were contrary to the weight of the evidence and were the product of improper passion and prejudice. This is similar to the argument about attorney misconduct, and we reject it for similar reasons.

## IV. *Conclusion*

The awards of $16,500 damages for breach of the disability insurance contract, $50,000 for exemplary damages and $798.40 for breach of the companion life insurance policy are affirmed. The award of $75,000 for mental or emotional distress is reversed.

No costs, neither party having prevailed in full.